Babon v. Superint SCIMahanoy Written by David Woah Da vs. Mr. Pabon ...Pabon v.s. Superintendent actually...technically ...Pabon v.s. Superintendent actually...technically  ...Pabon v.s. Superintendent actually...technically May it please the Court, my name is Elaine Brin and I represent the appellant Angel Babon. The question before the Court this morning, this afternoon, Your Honors, is whether the appellant Angel Babon's pro se habeas corpus petition was timely filed under 28 U.S.C. 2244D and two, whether there is a basis for equitable tolling of the limitations, period. I'm concerned about jurisdiction. Can you talk about Bruton a little bit? When I, if I may, we have no instruction from the District Court on any of Mr. Babon's issues that he raised on habeas. Because he found it wasn't timely. I'm sorry, Your Honor. Because the Court found it wasn't timely. That's correct, Your Honor. And I believe that the Court made a mechanical determination and did not review any of the issues and they are not discussed or reviewed in any way in the District Court. Therefore, when this Court requested that I file a second brief pursuant to Slack v. McDaniel and make a substantial showing of a constitutional right, I went back and looked at the issues that were raised in Mr. Babon's pro se habeas petition. And I went back and looked at the record and I raised a claim concerning Bruton that his co-defendant's testimony against him was not properly redacted and therefore prejudicial. Your Honor, I'll be quite honest with you. When I went back and looked at Mr. Babon's four claims that I saw that were raised in the pro se habeas petition, which I now believe may not be complete, I felt I was limited by those. And since I filed my supplemental brief concerning Slack v. McDaniel and I was preparing for my argument today, I went back and I looked at his amended petition. Your Honor, it is my understanding that the claim raised in the defendant's counseled amended PCRA petition in state court raises a claim that his counsel was ineffective by preventing him from testifying at his trial. I thought that claim had very substantial merit. I assume that we're here on the petition that you filed in the federal court and you're saying that you went back pursuant to our Slack request and looked at his claims to see if you could make out a jurisdictional argument of assuring him for denial, substantially assuring him that counsel was right. And in that inquiry, you found another claim that was raised in the PCRA court in state court. That I did not see in the habeas petition. Well, if it's not there, it's not there. Well, I'm not sure about that, Your Honor, because I also believe that there is a transmission of the record from the district court and that there may be missing documentation. And I believe Was the habeas petition that you filed complete? I think it's not, Your Honor. And I think that that's something that could go back to the district court to see if there was something lacking. As I say, we have You filed the petition in district court. You filed that, didn't you? No, I did not, Your Honor. That was the pro se petition. This is a pro se petition and this was complete pro se litigation in the district court. And I've been court appointed based on, after a denial of a certificate of appealability, this court did another examination and I only received it in, quite frankly, I was focused on the first question, which was the procedural question. But when I received a request to do a further review of the habeas issues pursuant I went back and I pulled the court record. Which court record? District court record? The trial record, Your Honor. Yes, because this is arising from a 2254 habeas petition from state. But we say the petition may not be complete. It sounds like you're saying it may not be complete because things that were raised before the PCRA court did not find their way into the pro se. That's correct, Your Honor. And I'm not sure exactly what went in, if the habeas petition is complete. Well, how do we react to that? I mean, we can only deal with what we have before us, right? Well, that's what I did, Your Honor. I did deal with what was before you and I'm making the claim that the district court did no independent review. My argument is that the district court received the pro se habeas petition, did a mechanical calculation, did not examine the petitioner's, I'm sorry, the appellant's objections. And what the district court said was he's out of time and he didn't state in his habeas petition why he is out of time. The fact that the defendant, pursuant to a footnote. We're sliding over to the merits now. You really, what a long day. It is a long day. I think you're getting into the merits of equitable tolling and we need to get there. But before we get there, I'm trying to get my mushy little mind around what you said about the PCRA petition. And frankly, it's like nailing smoke to the wall.  I will try to explain myself better, Your Honor. That there's a procedural default, but you don't want to concede it's a procedural default. And that something that should have been in the pro se habeas petition wasn't in the pro se habeas petition. But had it been there, that would be yet another basis upon which you could make a substantial showing of a denial of a constitutional right under SLAC and therefore we have jurisdiction to review the merits of the equitable tolling. That's what I'm saying, Your Honor. I'm saying that there would be a, there's issues raised from direct appeal that are raised in the habeas. Let me see if I can go back to the dugout and walk back out on the field. Back in May, I was on a panel that each of us look each week at various petitions that people have for certificates of appealability. And we decided, based on an investigation and a memo of a staff attorney, that a certificate of appealability should be issued. It was issued on the ground that the procedural ruling denying Mr. Pabon's habeas petition as time barred was debatable. The problem, which was ours, was that we needed to take a look at a second prong. And that is whether there was a substantial showing of the possible denial of a constitutional right. And the Supreme Court has said that you can do that one of two ways. Either demonstrate that jurists of reason could disagree or that jurists could conclude that the issues presented are adequate to deserve encouragement. That's the second prong. On either of those, if you could address if taking us back to the job that we did not do on our end, is there, is it possible to conclude that jurists could, this deserves encouragement to go forward, or that jurists of reason could disagree? Well, Your Honor. On the constitutional right denial. Specifically on the Bruton. I think it's on the Bruton, right? Yeah. I'll focus on Bruton. It's the Sixth Amendment right to confrontation. This was a trial that came from multiple co-defendants that were involved in an incident that led to murders on Philadelphia Street. The Jesus, one of the co-defendants, had a confession that was read in. And in the confession, in the statement, they. Well, the government's alleging that there were four, and I guess this bleeds into the merits, but the government's saying that there was a driver and four shooters, correct? Correct. Of a person called Chino. And supposedly two of them, Ramon, or Roman, excuse me, and Ortiz did not implicate Pabon initially. Later they changed their testimony or their statements and gave testimony that he was there. Is that correct? That's correct, Your Honor. And the statement that was read in was of what? The Jesus. The Jesus. The Jesus. And it says, is there anything you would like to add to your statement? Answer, yeah. I know that I didn't shoot the girl who got killed. Another should be arrested for this. Now, how does that necessarily point to Pabon? That could point to Patalba, who was allegedly there but was not at trial. That could be Hernandez. It could be. Why does it necessarily point the finger at Pabon? I don't have it in front of me, Your Honor, but I think there was a description as well and then, of course, there was a statement by Pabon that was also read in. Elaborate that. How does Pabon's statement, when taken in conjunction with the redactions in the Houston statement, point at Pabon? Your Honor, it's a difficult argument for me to make. Well, if you don't make it, you're dead, so give it your best shot. You have no gluten claim unless you can make that argument. Well, what did Pabon say? Your Honor, he hasn't made the statement. You are firing wildly down Kim Herman's street, right? And De Jesus' statement did what? De Jesus' statement put an implication that Well, De Jesus said he's standing right next to, I guess it's Cruz. He couldn't possibly have missed because he was standing right next to him. And in terms of someone else being shot, he heard some other shots in a different direction. He looked down there. He's not responsible for that. Some other guy should be arrested for that. And Pabon starts talking in his statement about how he was firing wildly, which at least arguably could have followed the street. He didn't have the intent and he would not have had the intent. De Jesus' fingering for the shooting of the two girls, is that? That's the way I understand it, Your Honor, and thank you. Now, my understanding is that Pabon confessed to shooting, quote, in the direction, close quote, from which he believed Ortiz had been shot. And that brings me to my second problem with Pabon's statement, confession, if we want to call it that. He was Spanish speaking. He speaks Spanish only. He gave his statement to a detective. It was not videotaped. That was transcribed in English. So Mr. Pabon is challenging that confession and challenging that statement. And that's where we are with that. But your brutal issue is that there was a non-testifying person's statement read in that implicated Pabon. And my question to you, which started us off on this, is how did that, quote, another person, close quote, implicate Pabon as opposed to any of the other possible shooters, including the one who wasn't there at Quetalba? Well, I think you have to take it in context with the Pabon confession at that time as well, Your Honor. That he was there. Yeah, he was there. And also, they were convicted of first degree murder. A first degree murder conviction requires a specific intent. And I don't know that that could be proved just from those statements. This was a group, it was a drug group that had a conflict, but I don't think you could. His defense was I wasn't there. Initially his defense was I wasn't there. And nobody gave me a gun. And I didn't shoot it. And I'm being convicted by virtue of association with this drug group. Is that correct? That's what a statement may have come in and said. But clearly they found the evidence was that there were fingerprints. And then there was a change statement. But they would still have to prove each and every element of a first degree murder charge. And with regard to Pabon, they would have had to prove that he intended and that it was a conspiracy for that to happen. And Mr. Pabon said that's not what happened. And he said that through an interpreter. The issue that I did not see in the pro se habeas petition that came up was whether or not his counsel advised him not to testify. And Mr. Pabon wanted to testify, and that was what was fully raised. And if Mr. Pabon had testified, the jury could have heard exactly what he had to say in his own words. This was a full trial before Judge Greenspan. They had full interpretation. That was an issue that I felt had substantial merit based on everything I read about the trial. You're saying ineffective assistance of counsel? That's correct. And that was raised in Sandra Rodriguez's counseled pro se PCRA petition. And I did not see that issue, but I'm not sure, one, that the full record went up to the district court. That's one question. And that's a question for the district court to review and make a determination. You said some time for rebuttal, I think, didn't you? I did, Your Honor.  We're from you again. Thank you. Ms. Palmer. Thank you. Good morning, Your Honors. Good morning. May it please the Court, Ann Palmer for respondents. I knew her, didn't you? I never. Well, I haven't been before you before a couple other panels, but this is a pleasure. You have been. You have been. Okay, well. So I guess I'll just make a few points in response. Please let me know if you'd like. I'll focus on the Bruton point. Okay. I'm not as concerned about the missing pro se, possibly the faulty things from the PCRA. But if DeJesus gives a statement, it looks like DeJesus' statement when he gave it, he's talking about Pagan because Pagan's the one who paid him. It's redacted in such a way that would suggest that a jury could infer that he's referring to Pabon, who's trying to distance himself from the statement that's admitted against him that he gave. When, in fact, it's relating to somebody else. Why isn't that a classic Bruton problem? Well, I guess under Gray, the contextual implication does not, the statement itself really should be the focus of the inquiry. And our position is that with the multiple shooters and co-defendants, and that's acknowledging that one of the co-defendants was Eileen Centeno. How many multiples are there? How many people testified at trial as defense witnesses? Also, don't forget that Roman and Ortiz also testified at trial. It's not like Priester where you've got a possibility of 15 people that could be implicated in that statement. True. It's not a football team of people. But nevertheless, it's a significant number of people who are involved. What does significant mean in this context? Well, for example, it's not a two-person case as in Vasquez. And I think we touched upon in the brief how this is totally distinguishable from the circumstances in Vasquez where you had a two-person case where taking aside the concerns about what Gray says in terms of contextual implication not being a basis for Bruton error, you don't have those other circumstances here. I don't understand that. Why is it exactly like Vasquez and like Cruz, especially since he's trying to distance himself from the statement that he gave? He's saying he didn't give it. Well. And he made arguments that certain, not suggesting obviously it's true, but there's certain things he says that police always ask that weren't asked of him, that were asked of police. It was like, how far did you go in school? And those were things the police wouldn't know the answer to. So he's arguing that's evidence that the statement is not really his. It's a manufactured statement. I'm sorry. I couldn't hear the last part. Okay. I'm sorry. He is saying that those things are indicia to support his argument that the statement is not his because there's not the kind of things in the statement that oftentimes usually you find in statements, and that is those are things that only the defendant would know, such as how far did you go in school. Those kinds of things that were asked of De Jesus were not in Pabon's statement. That's additional arguing. That's additional evidence of the fact I did not give this statement. Okay. I'm sorry. I didn't know whose statement we were talking about. We're talking about Pabon's statement. Right. Okay. Well, I guess preliminarily I should point out that any challenge to the confession itself is non-cognizable as a result of it having been fully and fairly litigated on. I'm not talking about that. Okay. I'm only talking in terms of how far it's gone under the Bruton Inquiry. Bruton Inquiry. Well, that was not in counsel's brief, to my recollection, so I didn't sort of prepare for that. It's endemic in any Bruton Inquiry. You've got to look into the nature of the harm that comes from the redaction. And if the harm arises, the harm may be greater in a situation where the defendant is saying, that's not my statement. And the redacted statement of De Jesus may, and may even erroneously, tie Pabon to the statement he's trying to distance himself from. That's part of the Bruton equation, isn't it? Well, I guess our position, I believe, would be that, again, that particular theory not having been briefed, but that it's outside its contextual implication because the focus should be on De Jesus' statement and whether there's any basis to identify Pabon. But De Jesus' statement was supposed to, another person he was talking about was really Pabon, right? Yeah, and that's the most reasonable thing to infer, I believe. Yeah, that's my understanding from the conversation on the record. What makes the context say that's the most reasonable thing to infer? Well, personally, I would believe the man who contracted for the killing, I guess, would be. I mean, the most culpable, if you're going to say, if you're going to pick one out of the many people involved in the shooting. I want to be clear, you're saying that the thing that makes it relatively clear to you that De Jesus is talking about Pabon is the stuff in his statement about who paid him? Because if that's true, that stuff was taken out and would open up the door to the jury, assuming that he's talking about, when he says someone else should be charged for that, that he's talking about Pabon and not Pagan, because the jury doesn't hear that he got the Grand Trino or whatever it was he got, the Grand National, I guess, and that he was paid by somebody. Well, I think the jury did understand, at least from my recollection of the record, that the killing was instigated in part by Mr. Pagan and Eileen Centeno's payment of the shooters. And I guess if you're going to pick of all of the contextual implication, which really shouldn't be part of the inquiry. Why shouldn't the contextual implication be part of the inquiry? I don't know what the redaction does and its significance, unless we look at the overall statements in context. Pabon's statement and that much of De Jesus' statement, which the jury heard, and that which was taken out, and whether or not there's an inference that could give rise to the fact that the jury would conclude that De Jesus is figuring Pabon when he says somebody else should be arrested for that. And there's no follow-up. Well, I guess I just undergray the contextual implication. Regis says you can redact the statement and satisfy Brewett. And you've got other cases like Cruz and Richardson, which say that redaction in and of itself is not enough. It depends on the overall implication of the statement. And you've got to look at what a reasonable jury may conclude from that in order to get at the significance of any redaction. And clearly the cases say you can't just plug in some other guy and replace the defendant's name with that. It's all contextual. Well, yeah, but under – Who actually suggested use of the term another? Wasn't it actually Pabon's attorney who suggested that? I believe it was counsel for one of the other co-defendants, but counsel for Pabon did not object at the time. And everyone's focus was protection of Pagon and Sentineau, who – let's just put it – everyone involved in this redaction believed that the reference was most obviously to Pagon or Sentineau, not to the other shooters. When you say who's everyone involved, who do you mean? All the attorneys in the court. Because they knew the entire statement. Well, perhaps, but they were aware of the context, I guess, very acutely. And so I guess, Your Honor, our feeling is that it's really not – it's under Gray and Richardson and the Supreme Court cases, but also taking into consideration the guidance given under Vazquez where you have circumstances that put this – put Pabon's case wholly apart in terms of the multiple shooters, the absence – The third thing I said, multiple shooters, and I seem to be referring to Priester, but I don't see that big a multiple here. Because you've got one defendant testifying, he's not the guy involved. You've got – I mean, one defendant is not – Hayes is not involved because you've got his statement at issue. You have other defendants who were shooting who are now testifying on behalf of the government. When you factor out of the four or five people involved in this offense, the number of multiples it could be, you're left with two people. Well, but they were aware, for example, I believe Robles was still at large. But there's no reason to conclude that the mere fact that he wasn't being tried, nor was Pabon being tried, and that didn't prevent that implication that if anyone, it was – I would believe him. But I'm not aware of any restriction under the case law to only being to co-defendants rather than others involved in the crime. No, it's not. But he's mentioned it because we made the point in Priester that there were 15 people involved, and that was relevant because it suggested that the jury was not going to be unduly pointed toward the defendant by the nature of the redaction. There were just too many people involved. Here, and you use the term multiple people, I think, to kind of go down that road, it does not seem like the multiples here are all that many. You may be right. I'm not taking another look at it, but it just doesn't seem like the number of possible people that de Jesus could be referring to when he says some other guy should be arrested for that is all that great. Well, there are three co-defendants other than the maker of the statement, plus those not being part of this trial would be two more. So you have five. So it's sort of a significant – Some of them are government's witnesses. De Jesus doesn't count. Well, you could – I guess I haven't seen that restriction in the case law, but, I mean, we'd be happy to look into it further, Your Honor. You're raising some questions that weren't in the brief, so I'm trying to spontaneously – Should this go back for a look at that issue because of – and I guess there's obviously preliminary issues as to the types – has this person had a chance to have this claim aired, and is it a debatable claim? We believe not, and especially if you apply the epideference, which is obligatory, the state courts – Well, that's a merits issue. True, but it goes to whether it's debatable. I mean, we don't resolve the merits. We just have to find that it's a possible violation that people of reason might be able to go one way or the other, or, as the Supreme Court said, it deserves further encouragement in terms of looking at it. I believe not, and I think the fact that Judge Green – sorry, Judge Greenspan, my recollection is, gave it the treatment it deserved, which was that it really was not a viable claim. We believe that there has not been a substantial showing or showing under the case law, an argument made under the case law that it deserves encouragement. We don't believe that it does. No, but Judge Greenspan's a very fine judge, but that doesn't necessarily mean that – I know, I know. Even if – I mean, the way the law is, especially after Miller L., that even if debatable jurists would disagree with the defendant, if the claim that he or she is raising is one that would be debatable amongst those jurors, even though they might ultimately disagree with him on the merits, it is still something that would be sufficient to at least get a merits review. Absolutely. I'm just saying that it has been looked at below, if not by the district court, and was believed to be devoid of merit. Well, the district court never looked at it. Right. I guess that's what you're saying. Yeah, I'm saying the district court didn't look at it, but the state courts did, and considered it to be devoid of merit. So that's something perhaps to factor into the consideration whether it deserves encouragement. But to the extent that factors in, that would mean we never review a case, because we just say that, well, the state court judge already looked at this. No, true. Absolutely. And, you know, recognizes that. I mean, the whole nature of federal habeas review is with the understanding that federal review by this court and the district court is appropriate under the right circumstances. But I guess we just feel that given the factors that have been outlined and the guidance under Gray and Richardson Well, how does Gray focus not so much on Richardson, but on Gray and also Cruz? How does that help you in terms of the merits of the Bruton claim? Well, we feel that the contextual implication theory has been rejected under the Supreme Court case law and that In which case? Well, Gray, I believe, and sorry, Richardson, and that Gray has said plainly that this sort of indicated that other guys is okay, and another I'm sorry, that? I think a reduction referring to other guys, this sort of neutral pronoun of the kind used here is permissible. But again, it depends upon the context, doesn't it? If you take out the defendant's name including other guys into a statement which has other stuff in it, which clearly points a finger directly at the non-testifying defendant, the fact that the defendant's name is taken out and replaced with other guys doesn't do anything. And especially, again, as I said earlier, and that's Cruz where the defendant is trying to put distance between himself and the statement. And his own statement is introduced against him. I'm not sure that Richardson or Gray really help you there, and it seems especially Gray hurts you in Mill Row, and that's more of a jurisdictional inquiry. Well, it almost, I guess the concern arises if the court relies almost exclusively on contextual implication, then that's a problem too. I mean, there's really nothing in the statement that is a direct implication of Pavon. And there comes a point that you're moving so far away from DeJesus' statement that there's... How far away are we moving? Some of the guys, I know I didn't shoot Cruz. I'm standing right next to him. I couldn't have missed him. Another guy. Well, he doesn't say another. He says another, so it could be referring to Sentinel. It's gender neutral. So it could be any of the three other co-defendants. He's talking about whom when he says another guy. Well, he doesn't say it. I misspoke. It should have been another, and it's gender neutral in another. And so that... It's clearly Pagon he's talking about because that's who paid him, looks to me. Maybe I'm reading too much into it. He's talking about Pagon. And when you take out... When you get to just the redacted statement, I'm trying to figure out why is this not Pagon that he's referring to? And if I'm on the jury, how do I know that he's not fingering Pagon in his statement? Well, no more than you know that it's not any of the other people, which are, again, three other co-defendants and two other participants named as co-conspirators. Actually, this is part of the problem of having a joint trial. It is. Well... A statement that was referring to the ringleader conceivably could refer to Pagon, and everyone knows, we know that's not the case, but the jury doesn't know that. Well, it... And it could have either been Hernandez or Robles, or Pagon. That's the only three people it could be. Well, the inference is awfully attenuated. And given the other stronger candidates, the question is, is there a brutal error for Pagon? And the Supreme Court has encouraged joint trials for all the reasons this Court is aware of and that also face federal district courts. Yeah, but not in the context of these kinds of redacted statements. I don't know of any case that encourages joint trials. To some respect, the question is, should we ultimately get to the merits because of all of the things that have happened here procedurally? I mean, we've got a case of a person who doesn't understand English. You've got a judge who thinks, well, that makes no problem because his counsel clearly understood Spanish. Turns out Ms. Rodriguez made it clear in her writings she doesn't know any Spanish. And, I mean, it's sort of like just all the way through, this is just a messy, messy case. Oh, I couldn't disagree with you more. May I respond on the equitable tolling argument just to weigh in on that? Because I had expected more of the discussion to be about both. But I'm glad... Being a messy case, you couldn't agree or disagree with me. I couldn't disagree more because this is really, when you think about it, it's a really mistake of law. And it's very clear under Lawrence v. Florida and Jones v. Morton and many other cases and sort of universally around the other circuits that mistakes of law do not give rise to equitable tolling. And the mistakes here are twofold. The impact of the nine months that Pabon allowed to elapse before filing his PCRA petition. I mean, I looked at all the things he did. It's amazing what he did. Remember, here's a person in RHU, and he's done, I've got here, 11 things that he attempted to do to try to get someone's attention. And his own attorney doesn't speak Spanish. I mean, you don't really want to, although you say in your brief, to have a bright line that a reason for equitable tolling, if somebody doesn't speak your language, that can't be a reason for equitable tolling? Well, other courts have taken that position, and I would just... But Mendoza and Diaz, the Ninth Circuit and the Second Circuit, respectively, haven't. Well, can I go back for a moment? Because to the extent, Your Honor, suggesting that it may be an offensive position, I think the difficulty this court will have to face is to find a principal distinction between illiteracy and non-fluency. Because I think it's highly problematic that a literate prisoner, who's demonstrated himself to be highly adept at obtaining translation assistance and quite great assistance from jailhouse... Of course, you'd look at that. You may be absolutely right on the merits of this equitable tolling claim. It may not be able to establish extraordinary circumstances. But it does seem, especially if you look at Holland, where we're not supposed to have any bright line rule, if someone can come in and show there are extraordinary circumstances, because they tried to do all these things, they did exert due diligence, they didn't sleep on their rights, and yet they were precluded from meeting the filing deadlines of EDPA. Why isn't that exactly the kind of thing the district court should take a look at? Well, Holland's very, very different. He had an attorney who was... I'm not talking about the facts of Holland. I'm just using that to say that you seem to be suggesting a bright line rule that illiteracy or difficulty with English language should not be a ground for equitable tolling. And I'm saying that's the kind of bright line rule Holland says should not be applied. Well, is this court prepared to accept illiteracy as a ground for equitable tolling? Learning disabilities? There's a flip answer to that. That's the next case. But it's a problem. And there has to be a principled distinction made, right? Well, in this case, there is a principle that you've got two circuits and with, you know, well-known panels who have said that a possible reason for equitable tolling is that the person cannot speak the language in which the person is being indicted. And it's not going to help. And all we're saying here is isn't that a possibility that needs to be explored, especially with the misstatements that were contained in the district courts? Well, let's look at it, though. The courts that have recognized non-native abilities in English as a ground for tolling have required actual impediment and substantial mitigation efforts. And the very things that Your Honor points to as examples of his diligence demonstrate his ability to obtain and make a translation and legal assistance. Don't forget he filed a pro se petition within the EDPA limitations period, demonstrating his ability to do legal filings in English. He had access, presumably, after he had access to a translator. And, again, everything you say may be enough to get you to win in the district court. Once you get there. You may win. The issue is now should he have a hearing on that? Absolutely not. Because, Your Honor, I wanted to go back to the restricted housing unit. There aren't too many absolutes in life. Well, in this case, he has made no proffer, a very telling one, that he was in the restricted housing unit for five years. He did not allege that that was not for disciplinary reasons. He did not allege the time period that he was in the restricted housing unit. He was incarcerated at the latest in 1999 at the time of his sentence. I have no idea how any of that makes any difference. If he can show that he exercised due diligence, that he didn't sleep on his rights, and made attempts to try to comply with the law, and he was precluded through his inability to speak Spanish, but he tried despite his inability to speak English to get necessary forms, to get translated forms, and just couldn't do it. If we're supposed to look at things on a case-by-case basis, why shouldn't he have the opportunity to make the argument that that is an extraordinary circumstance that should allow for equitable to align under Holland? Because it was not an actual impediment in this case. He was able to do legal filings throughout. He made the mistake of law, and his advisors made the mistake of law to do so in going through the grievance process and filing a petition for certiorari post-PCRA review, and the law is quite clear that- Do we know what kind of translation services he had available to him when he was able to do that? Excuse me? Do we know what kind of translation services he had available to him when he was able to do that? Again, everything you're saying might mean that you win at the end of a hearing, but the fact that he was able to successfully file a piece of paper in one court doesn't necessarily mean he was able to get access to the translation services he needed to file in federal court. You may be right. Maybe what he's arguing is that he can't establish that on the record, that he didn't have access to those translation services. The issue here is only whether or not the district court should take a look at the equitable totaling. But he made no proffer that, as a matter of law, it's not sufficient to make allegations that in and of themselves would not, as a matter of law, entitle him to equitable tolling. Well, we don't know that. His restricted housing unit, where he does not allege that he was there for protective purposes, his attorney on appeal does not make that allegation. I'm not sure I'd do the same. But I do think I understand your argument. And the courts of the circuit have- I could not find a single case that said that restricted housing unit housing is enough for equitable tolling. No, it's true, Dr. Holland, because it's not a case-by-case involvement. That affects your diligence point. The point was he's in that restricted housing. He's still trying to do A, B, and C and D to do what he has to do to file. That's why you asked that question. But the diligence efforts that Your Honor, I think Your Honors are pointing to, are misdirected. And if you can't say that any inmate who writes letters is entitled, is deemed diligent- Ms. Palmer, then you win after the hearing. Let's hear, I think Ms. Byrne- Okay, does she want to- Okay. Thank you, Your Honor. Your Honor, I just want to repeat that the- If you're repeating it, please- No, no. No, no. I just, on the due diligence, Judge Restrepo, in his opinion and recommendation, said in a footnote that the defendant would have the opportunity of, have notice and an opportunity to be heard. The defendant then filed his objections, which were documentary. It explained his diligence in trying to obtain information. And then the fact that he filed the objections is disregarded by Judge Rubino in the final order. I hear in the writings, and I hear in argument, the defendant did not allege why he could not timely file. Well, he didn't in his first hideous. But when he got his report and recommendation, he saw the judge was going to find him untimely and not review his notes at all, but gave him notice. He promptly filed a series- And this is rebuttal, and you'll help me understand and remember it's rebuttal to what that Ms. Palmer said. That the question that the court did not have, that the defendant did not make out a racy issue of his diligence and provide enough proof. I also want to draw the court's attention- She said that. That there was an assumption in the district court opinions that Ms. Rodriguez represented him and that she was Spanish-speaking. Ms. Rodriguez represented him as court-appointing counsel in the state. The defendant reached out to her while he was a pro se litigant for some additional information, and I know the court has read her letters. Oh, I was surprised. Oh, let me see if I can help you. But in no way was she his appointed counsel. And I would ask that if this court decides that this case should be remanded, that Mr. Pabon be appointed counsel for two reasons. One, I think that the certified record has to be looked at in its entirety to make sure that it's complete. And two, Mr. Pabon obviously has some problems being able to file things. And, Your Honor, I believe he needs counsel, and I would ask that if this court would consider a remand. Thank you. Okay. Thank you very much.